ELLIS, Judge.
Plaintiff has appealed from a judgment dismissing his suit for workmen’s compensation as a result of an accident in which he alleged that his knee was injured to such an extent that he was totally and permanently disabled.
The facts reveal that plaintiff was assisting in unloading cement from a box car and in some manner he was knocked and fell out of the car when the hand truck which he was rolling tilted forward. He was taken to the Baton Rouge General Hospital and treated by Dr. Mosely for cuts on his leg. After being discharged he still complained of pain in his knee. Dr. Bannerman, an orthopedic surgeon, operated on his knee in May and plaintiff remained in the hospital for about ten days. He remained under Dr. Bannerman’s care until December 1958 when this doctor discharged him to go to work. The employer’s insurer paid compensation to the plaintiff at the rate of $33.15 per week to December 8, 1958, a period of eight months, and a total of $1,159.25, plus $672.10 medical expenses.
Plaintiff claims that he is not able to do any work and particularly the type of work he was doing on the date of the accident and injury to his left knee because of the pain in the knee.
After being treated by Dr. Mosely the plaintiff went to Dr. Bannerman, an orthopedic surgeon, who operated on plaintiff some two months subsequent to his injury as his symptoms indicated a tear of the meniscus which is the cartilage in the knee. This cartilage was removed and plaintiff remained on crutches for about three and one-half weeks, and he was then allowed to start walking, with instruction to use heat and wear an Ace bandage on his knee for support, and under these measures he gradually improved. In August he still showed some tenderness and the heat treatment was continued. By the first of September plaintiff seemed to be getting along rather well, whereupon, Dr. Banner-man urged him to increase his activities-by engaging in more walking which plaintiff said he did and which brought on more complaints of additional pain. In the middle of September Dr. Bannerman injected the knee with hydrocortone but noted that plaintiff’s improvement was rather slow as in ordinary cases three to three and a half months is sufficient to allow the muscles to regain their strength and a resumption of normal activity. He was injected with hy-drocortone again in October, around the 20th, and encouraged to use his leg fully. Plaintiff was seen by Dr. Bannerman about every two weeks during this time and received a total of some three injections in his knee altogether from the period of September through November. In December of 1958, although plaintiff continued to have complaints referrable to his knee, Dr. *352 Bannerman found no physical findings to substantiate such a complaint. On an examination at this time the two muscles on each side of the knee were within a half inch of each other in size. This doctor explained in his testimony that in determining comparative strength of the two legs, the measurement of the size of the muscle of the two legs is a fairly accurate indication of the degree of use which a man has of his leg, and for practical purposes he felt that when the size of the plaintiff’s legs were within a half inch of each other that there was probably rather normal function present, in the absence of any objective symptoms to disprove such a fact. Therefore, in December, 1958, he felt that the strength of the leg was good, the motion was normal, and there was no instability. The plaintiff complained, however, of tenderness on the anterior joint line, which was about the area of the operation scar, which Dr. Bannerman thought might probably be due to a small nerve ending getting caught in the scar tissue, although there were no positive findings to substantiate such a thought. He was of the opinion that the plaintiff had recovered sufficiently to return to his regular work; that plaintiff has no residual of any consequence as a result of the injury; that he had a temporary disability in his leg of approximately 10% due to lack of use which would clear up with activity. He made it clear that the temporary disability in plaintiff’s leg was approximately 10% from lack of use and would only result in the plaintiff feeling some fatigue quicker in the left than in the right leg. Dr. Bannerman also testified that the operation which he performed upon the plaintiff ordinarily and in most cases resulted in a return to normal activities so far as the legs are concerned, .and cited examples of football players who had gone through such an operation and returned to the active playing of football. Dr. Bannerman was of the opinion that 'had plaintiff followed his instructions of -the performance of normal activity in the latter part of November that probably within 60 or 90 days the strength of his two legs would have been equal. The only difference that Dr. Bannerman could see in the plaintiff at the time of the trial and prior to his injury was not in his ability to work but simply as a result of the injury he had gotten a -scar on his knee, which like all scars for a time is somewhat tender, but this would not interfere with his ability to work and he was definitely of the opinion that as of December, 1958, the plaintiff could return to full regular work.
Dr. Dowell also examined the plaintiff on March 16, 1959 and by stipulation his report is placed in evidence. This report contains the usual history of the injury to the plaintiff on April 7, 1958, treatment by Dr. Mosely initially, and surgery performed in May by Dr. Moss M. Bannerman. Dr. Dowell gave the plaintiff a full scale examination and concluded that on the basis of his findings he estimated plaintiff’s disability in the left leg as 5% (100% being equivalent to amputation of the leg at the hip level). He was of the opinion that this 5% disability was permanent but did not feel “that this disability is sufficient to keep this patient from returning to his previous duties.”
The lower court with written reasons for judgment reviewed Dr. Bannerman’s testimony and that of Dr. Dowell by way of report which was by stipulation placed in the record and stated that as Dr. Dowell was plaintiff’s own witness that his opinion of the plaintiff’s ability carried great weight. The District Judge stated in his written reasons and we quote: “The plaintiff does not impress this court with a sufficient degree of his sincerity to enable placing the amount of confidence in his complaints to justify an award of further compensation.”
For the above and foregoing reasons we believe that the judgment of the lower court is eminently correct and it is hereby affirmed.